**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **DEWAYNE HUBBARD,** | **:** | |
| **Plaintiff,** | **:** | **Case No. 2:08-cv-181** |
| **v.** | **:** | **Judge Holschuh** |
| **INTERNATIONAL PAPER CO.,** | **:** | **Magistrate Judge Kemp** |
| **Defendant.** | **:** | |
| | **:** | |

**MEMORANDUM OPINION & ORDER**

DeWayne Hubbard, an African-American male, filed suit against his employer, International Paper Company, alleging race and color discrimination in violation of 42 U.S.C. § 1981. Plaintiff's claim is based on Defendant's failure to hire him for an entry-level production position at its Mount Vernon facility. This matter is currently before the Court on Defendant's motion for summary judgment. (Doc. 34). For the following reasons, Defendant's motion is granted in part and denied in part.

**I.      Background and Procedural History**

Plaintiff DeWayne Hubbard, a black male, was hired by Willamette Industries in 1978 to work at its Delaware, Ohio, box plant as a utility man on the corrugator machine. (Pl. Dep. at 8, 62). In 2002, the Weyerhaeuser Company, which already operated a box plant in Mt. Vernon, Ohio, acquired Willamette's Delaware facility. (Leggett Dep. at 10). In 2008, International Paper Company purchased the Mt. Vernon plant from Weyerhaueser. (Sims Decl. at ¶ 2). Both the Delaware and Mt. Vernon facilities make corrugated sheets of cardboard and convert them into containers, but the Mt. Vernon facility has some newer, more sophisticated machinery. (Sims Decl.

¶ 10; Sims Dep. at 35).

In 2000, Plaintiff moved to Mt. Vernon, where he serves as part-time pastor of a church. (Pl. Dep. at 45, 87). After Weyerhaeuser acquired the Delaware plant, Plaintiff began expressing an interest in transferring to the Mt. Vernon facility so that his commute would be shorter. (Pl. Dep. at 88). In September of 2005, Plaintiff interviewed for an hourly entry-level production position at the Mt. Vernon plant.[1] Weyerhaeuser was looking for "miscellaneous" workers who could be trained as assistant operators and operators of the machinery. (Sims Dep. at 32-38; Leggett Dep. at 31).

On September 20, 2005, Plaintiff was interviewed by managers Pat Leggett and Joe Sims, and union employees Candace Baker and Lanny Snell, all of whom are white. The interviewers used a set of twenty-five structured interview questions. These were graded on a scale of 1-5, with 1 being the lowest score. (Leggett Dep. at 17-18; Sims Dep. Ex. 1-4). At the completion of the interview, each interviewer would tally up his or her scores, and the panel would make a collective decision about whether to hire the candidate. (Sims Dep. at 29-30; Leggett Dep. at 21-22). The interview scores were just one factor to be considered. (Sims Dep. at 30). An applicant's previous manufacturing experience, past employment record, and leadership skills were also taken into account. (Sims Dep. at 32-35, 44, 154-55, 172, 179, 187; Leggett Dep. at 39-40).

Defendant maintains that Plaintiff's interview did not go well at all. Plaintiff allegedly "had difficulty understanding the questions" and often needed them repeated. (Sims Dep. at 58). Sims and Leggett testified that Plaintiff was slow to respond to the questions, and he did not exhibit an

---

[1] Plaintiff also interviewed for a Corrugator Production Supervisor position in the Mt. Vernon facility in May 2005, and was not offered the position. This action, however, is limited to claims arising from the September 2005 interview for the entry-level position.

ability to think on his feet.  (Id.; Leggett Dep. at 31-32).  When asked why he wanted this job, he explained only that it would be a shorter commute.  He did not discuss what contributions he could make to the Mt. Vernon facility.  (Sims Dep. at 58-59).  Candace Baker and Lanny Snell gave Plaintiff an overall score of 81, Joe Sims gave him an 82, and Pat Leggett gave him a 56.  (Sims Dep. Ex. 1-4).

Leggett testified that the panel was looking for candidates with  "ambition and a sense of urgency" and an "ability to work in an intense, high speed, snap-net, decision-making process."  The fact that Plaintiff had worked at the Delaware plant for 27 years but had "never once been an operator" was "a big red flag."  (Leggett Dep. at 43-44, 50).  According to Leggett, Plaintiff appeared  capable of performing entry-level roles but lacked the requisite ambition to move into an operator position.  (Leggett Dep. at 36-37).  Likewise, Sims testified that, based on answers to the interview questions, Plaintiff "did not demonstrate the ability to be an operator."  (Sims Dep. at 111).  The panel therefore denied Plaintiff's request to transfer to the Mt. Vernon plant.  (Leggett Dep. at 51-52).  Within the next several months, Defendant hired several white males for entry-level positions at the Mt. Vernon plant.  Plaintiff maintains that at least eight of these individuals were objectively less qualified than he was, giving rise to an inference that Defendant discriminated against him on the basis of race and color.

Plaintiff filed a charge of discrimination with the Ohio Civil Rights Commission ("OCRC") on January 23, 2006.  On September 14, 2006, the OCRC found it probable that Defendant had discriminated against Plaintiff on the basis of race.  (Ex. 22 to Bryan Dep.).  As a result of this finding, Defendant offered Plaintiff an entry-level production position at the Mt. Vernon plant.  Plaintiff accepted the offer and began working there in October of 2006.  (Ex. 23 to Bryan Dep.).

Nevertheless, on February 26, 2008, Plaintiff filed suit against Weyerhaeuser alleging discrimination on the basis of color and race. International Paper was later substituted as the defendant and has now moved for summary judgment.

## II.     Standard of Review

Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules, which are designed "to secure the just, speedy and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). The standard for summary judgment is found in Federal Rule of Civil Procedure 56(c):

> [Summary judgment] . . . should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Summary judgment will be granted "only where the moving party is entitled to judgment as a matter of law, where it is quite clear what the truth is . . . [and where] no genuine issue remains for trial, . . . [for] the purpose of the rule is not to cut litigants off from their right of trial by jury if they really have issues to try." Poller v. Columbia Broadcasting Sys., 368 U.S. 464, 467 (1962) (quoting Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 627 (1944)). See also Lansing Dairy, Inc. v. Espy, 39 F.3d 1339, 1347 (6th Cir. 1994).

Moreover, the purpose of the procedure is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried. Lashlee v. Sumner, 570 F.2d 107, 111 (6th Cir. 1978). The court's duty is to determine only whether sufficient evidence has been presented to make the issue of fact a proper question for the jury; it does not weigh the evidence, judge the credibility of witnesses, or determine the truth of the matter. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Weaver v. Shadoan, 340 F.3d 398, 405 (6th Cir. 2003).

In a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue as to any material fact exists and that it is entitled to a judgment as a matter of law. Leary v. Daeschner, 349 F.3d 888, 897 (6th Cir. 2003). All the evidence and facts, as well as inferences to be drawn from the underlying facts, must be considered in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Wade v. Knoxville Util. Bd., 259 F.3d 452, 460 (6th Cir. 2001). Additionally, any "unexplained gaps" in materials submitted by the moving party, if pertinent to material issues of fact, justify denial of a motion for summary judgment. Adickes v. S.H. Kress & Co., 398 U.S. 144, 157-60 (1970).

"[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson, 477 U.S. at 247-48 (emphasis in original). A "material" fact is one that "would have [the] effect of establishing or refuting one of [the] essential elements of a cause of action or defense asserted by the parties, and would necessarily affect [the] application of [an] appropriate principle of law to the rights and obligations of the parties." Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984). See also Anderson, 477 U.S. at 248. An issue of material fact is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. See also Leary, 349 F.3d at 897.

If the moving party meets its burden, and adequate time for discovery has been provided, summary judgment is appropriate if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex, 477 U.S. at 322. The nonmoving party must demonstrate that

"there is a genuine issue for trial," and "cannot rest on her pleadings." Hall v. Tollett, 128 F.3d 418, 422 (6th Cir. 1997).

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e).

The existence of a mere scintilla of evidence in support of the opposing party's position is insufficient; there must be evidence on which the jury could reasonably find for the opposing party. Anderson, 477 U.S. at 252. The nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." Moore v. Phillip Morris Companies, Inc., 8 F.3d 335, 340 (6th Cir. 1993). The court may, however, enter summary judgment if it concludes that a fair-minded jury could not return a verdict in favor of the nonmoving party based on the presented evidence. Anderson, 477 U.S. at 251-52; Lansing Dairy, Inc., 39 F.3d at 1347.

## III.    Analysis

In his Complaint, Plaintiff alleges that he applied for various positions at the Mt. Vernon plant, including laborer, sales, and supervisor positions, and that Defendant denied his applications based on his race and color in violation of 42 U.S.C. § 1981. That civil rights statute reads, in relevant part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981(a).

## A. Statute of Limitations

In its motion for summary judgment, Defendant argues that because Plaintiff's § 1981 claims are subject to a four-year statute of limitations, see Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369 (2004), and Plaintiff filed suit on February 26, 2008, any claims of discrimination arising prior to February 26, 2004 are time-barred. In his memorandum in opposition, Plaintiff impliedly concedes as much, and clarifies that his discrimination claim is based solely on being denied an entry-level position at the Mt. Vernon plant following his September 20, 2005 interview. To the extent that Plaintiff's Complaint could be construed to include claims arising prior to February 26, 2004, the Court agrees that such claims are time-barred and partial summary judgment is proper.

## B. Failure to Hire for Entry-Level Position at Mt. Vernon

Discrimination claims brought under 42 U.S.C. § 1981 are analyzed the same as discrimination claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* See Johnson v. University of Cincinnati, 215 F.3d 561, 573 n.5 (6th Cir. 2000); Jackson v. Quanex Corp., 191 F.3d 647, 658 (6th Cir. 1999). In an employment discrimination case, a plaintiff can withstand a motion for summary judgment either by presenting direct evidence of discrimination or by presenting circumstantial evidence from which a jury may infer a discriminatory motive using the framework set forth set forth in McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973). See Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997).[2]

---

[2] Direct evidence "is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999). A facially discriminatory employment policy or an express statement by a decision-maker of a desire to terminate employees because they belong to a protected class would constitute direct evidence of discrimination. See Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000).

Under that framework, a plaintiff must first establish a prima facie case of discrimination. The elements of a prima facie case vary somewhat depending on the theory of discrimination being asserted. If the plaintiff is successful in establishing a prima facie case, an inference of discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. McDonnell Douglas, 411 U.S. at 802-03. If the employer articulates such a reason, the presumption of discrimination drops away, leaving only the issue of "discrimination *vel non*." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142-43 (2000). The plaintiff must then prove by a preponderance of the evidence that the reason offered was pretextual. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981). The plaintiff has the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against him. Id.

In this case, Plaintiff has no direct evidence of race or color discrimination. The McDonnell Douglas burden-shifting analysis therefore applies.

### 1.. Prima Facie Case

A plaintiff may establish a prima facie case of race discrimination based on a failure to hire by showing that: (1) he is a member of a protected class; (2) he applied and was qualified for the position at issue; (3) he was considered and denied the position; and (4) other employees of similar qualifications who were not members of the protected class were offered the position. Nguyen v. City of Cleveland, 229 F.3d 559, 562-63 (6th Cir. 2000). For purposes of the motion for summary judgment, Defendant concedes that Plaintiff may be able to establish a prima facie case of race discrimination. The burden therefore shifts to Defendant to articulate a legitimate, non-discriminatory reason why Plaintiff was not offered an entry-level production position at the Mt.

Vernon facility.

**2.     Legitimate Non-Discriminatory Reason for Adverse Employment Action**

Defendant argues that Plaintiff was not offered an entry-level production position because it needed workers who would function well in an intense, high-speed environment and Plaintiff did not appear to fit the bill. According to Defendant, Plaintiff's performance at the September 20, 2005 interview was very poor. He allegedly struggled to comprehend and appropriately respond to many of the questions asked. Sims testified that Plaintiff "frankly was dismal" in answering the questions and that the interview was "terrible, worst interview I ever had." (Sims Dep. at 197). This, coupled with the fact that, although Plaintiff had worked at the Delaware facility for 27 years, he had "never once been an operator" (Leggett Dep. at 50), led Defendant to doubt Plaintiff's ability to successfully function as an operator at the Mt. Vernon facility.

The Court finds that Defendant has met its burden of articulating a legitimate non-discriminatory reason for failing to hire Plaintiff for the entry-level production position. The burden, therefore, shifts back to Plaintiff to prove, by a preponderance of the evidence, that the proffered reason is pretextual.

**3.     Pretext**

Plaintiff may prove pretext by showing that "a discriminatory reason more likely motivated the employer" or that "the employer's proffered explanation is unworthy of credence." White v. Baxter Healthcare Corp., 533 F.3d 381, 392 (6th Cir. 2008). Usually, a plaintiff will demonstrate pretext by showing that: (1) the proffered reason had no basis in fact; (2) the proffered reason was not the actual reason for the employer's decision; or (3) the proffered reason was insufficient to explain the employer's decision. Id. at 393 (citing Manzer v. Diamond Shamrock Chems. Co., 29

F.3d 1078, 1084 (6th Cir. 1994)). As the Court explained in Peters v. Lincoln Electric Co., 285 F.3d 456, 472 (6th Cir. 2002), the first and third types are direct attacks on the employer's credibility. With the second type, the plaintiff argues that the "sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." Manzer, 29 F.3d at 1084. Plaintiff, in essence, argues that all three types of pretext exist here. Based on the evidence presented, the Court concludes that a reasonable jury could find that Defendant's proffered reason is pretextual.

Plaintiff first argues that the proferred reason had no basis in fact. He has submitted an affidavit stating that, contrary to Defendant's claim, he "had no difficulty answering the questions that the interviewers asked me." (Pl. Aff.; Ex. to Mem. in Opp'n). Citing Lomax v. Sears, Roebuck & Co., No. 99-6589, 2000 WL 1888715, at * 4 (6th Cir. Dec. 19, 2000), Defendant notes that a plaintiff's assessment of his own qualifications is largely irrelevant. In this case, however, Plaintiff's statement is corroborated by other evidence of record.

The scores that Plaintiff achieved on the interview questions are inconsistent with the later testimony of Leggett and Sims that Plaintiff's interview performance was terrible. As noted earlier, each question was graded on a scale of 1-5, with 5 being the best. Sims gave Plaintiff an average score of 3.6 per question. Snell and Baker gave Plaintiff an average score of 3.5 per question. (Exs. 1-4 to Sims Dep.). Leggett's scores were lower, but he testified that he was a "tough grader" and that Plaintiff's total score of 56 was actually "pretty darn good." For Leggett, that score was "in the middle." (Leggett Dep. at 54-55). Sims admitted in his deposition that nothing in his interview notes supported his claim that Plaintiff had difficulty understanding and answering the questions. (Sims Dep. at 67). Moreover, as discussed in greater detail below, Plaintiff's scores were better than

the scores of several white applicants who were hired to fill the entry-level production positions. Based on this evidence, a reasonable jury could find that Defendant's claim -- that Plaintiff's performance at the interview was "terrible" -- unworthy of belief.

Defendant also maintains that Plaintiff was not hired for a position at the Mt. Vernon plant because, despite his 27 years of experience in the industry, he lacked experience as an operator. Leggett testified that this was a "big red flag," and demonstrated that Plaintiff did not have the requisite ambition and drive to be an operator. (Leggett Dep. at 36-37, 50). Plaintiff, however, contends that he "told the interviewers that I worked on and had been an operator on most of the machines at Weyerhauser's [sic] Delaware facility." (Pl Aff.). Again, Plaintiff's statement is supported by the interviewers' notes. One wrote, "[h]as experience with every job except roll grab." (Ex. 2 to Sims Dep.). Another wrote that Plaintiff "has done almost every job." (Ex. 4 to Leggett Dep.). A third wrote that Plaintiff had "knowledge of business." (Ex. 3 to Sims Dep.).

In its reply brief, Defendant concedes that Plaintiff spent 11 weeks in a 4A operator position, 16 months as a 3D operator on a Post Folder Gluer, and 7 weeks in a 6F operator position. Defendant now argues, however, that because Mt. Vernon does not use a Post Folder Gluer, Plaintiff actually possesses only 18 weeks of relevant operator experience. Nevertheless, based on the evidence presented, a reasonable jury could find that Defendant's claim that Plaintiff lacked operator experience is unworthy of belief.

There is also evidence from which a reasonable jury could find that the reasons given did not actually motivate Defendant's decision. As noted earlier, shortly after Plaintiff moved to Mt. Vernon, he expressed an interest in transferring from Delaware to Mt. Vernon. When Plaintiff contacted the office of the area human resources manager, Dave Bryan, to ask why it was taking so

long to get a job there, the person he spoke to told him that he "wouldn't fit in" at the Mt. Vernon plant. (Pl. Dep. at 111). Plaintiff speculates that this person meant that he "wouldn't fit in" because he was African-American. Plaintiff notes that he had a good employment record with the company and there did not appear to be any other reason that would bar his transfer. (Id. at 111-13). Plaintiff had no disciplinary record and no attendance problems. (Bryan Dep. at 76-77).

Defendant argues that this isolated comment, uttered by some unknown person, is insufficient evidence of a discriminatory animus. See Hunter v. Secretary of U.S. Army, 565 F.3d 986, 997 (6th Cir. 2009) (citing Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 491 (7th Cir. 2007)). The Court agrees that, standing alone, a stray remark of this type generally carries little weight. Nevertheless, when viewed in combination with other evidence presented by Plaintiff, it lends some support to Plaintiff's claim of race discrimination.

It is undisputed that no other African-American production employees worked at the Mt. Vernon plant at the time Plaintiff interviewed. (Bryan Dep. at 153-54). Sims testified that he interviewed no African-Americans for production positions between 2005 and 2008 other than Plaintiff. (Sims Dep. at 71-72). Defendant maintains that no African-American applicants had been referred by Adecco, the employment agency used to screen candidates for production hiring. (Ex. 19 to Bryan Dep.). Plaintiff testified, however, that his daughter, who is African-American, had applied for a job at the Mt. Vernon facility with no success. (Pl. Dep. at 109-110).[3] In the Court's view, the complete absence of other African-American production workers, combined with the comment that Plaintiff "wouldn't fit in" at the Mt. Vernon facility, may be probative evidence of a discriminatory animus.

---

[3] Plaintiff did not know what avenues his daughter had pursued in applying for the job.

Plaintiff further argues that, based on his education, work history and experience, he was better qualified than eight white applicants who were hired for entry-level production positions in the months that followed his interview. These eight individuals include Hue Abney, Patrick Van Winkle, Phillip Rhoads, Andy Frye, Jason Bevington, James Casebolt, Fred Garcia, and Jeff Galbraith.

"Evidence that the plaintiff was more qualified than the successful applicant can in some circumstances be sufficient to raise a genuine issue of material fact that the employer's proffered explanation is pretextual." This is especially true when the plaintiff presents other evidence of discrimination. Risch v. Royal Oak Police Dep't, 581 F.3d 383, 391-92 (6th Cir. 2009). "If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate -- something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture." White, 533 F.3d at 393-94 (quoting Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1294 (D.C. Cir. 1998).

Defendant maintains that, at the very most, Plaintiff was marginally better qualified than some of the other applicants who were hired. Defendant, however, argues that this is insufficient to withstand summary judgment. In the Court's view, when Plaintiff's qualifications are stacked up against the qualifications of the eight successful white applicants, a reasonable jury could infer that race was a motivating factor in Defendant's decision not to hire Plaintiff.

According to Leggett, the entry-level positions required a high school diploma, basic math skills, and the ability to read a tape measure and to "spell and write somewhat coherently, legibly." (Leggett Dep. at 15-16). Defendant admits that Plaintiff possessed the minimum objective

requirements for the position. In fact, Plaintiff holds a Bachelor's degree in Elementary Education from Virginia Union University and, at time of the interview in question, was pursuing a Master's degree in Business Administration through Phoenix University. (Pl. Dep. at 16-17).

Sims testified that applicants with manufacturing experience would have an advantage over those without manufacturing experience. (Sims Dep. at 32, 35). Although Plaintiff had 27 years of manufacturing experience, more specifically in the corrugated cardboard industry, he was not hired. Defendant, however, did hire James Casebolt, Jason Bevington and Patrick Van Winkle despite the fact that they had no manufacturing experience whatsoever. (Exs. 15, 18, 29 to Sims Dep.).

Sims also testified that, as a general rule, a candidate who had experience as a machine operator at another Weyerhaeuser facility would have an advantage over other applicants. (Sims Dep. at 33-35). Some of the machines at the Mt. Vernon facility were the same as machines at the Delaware facility; others were more sophisticated. According to Sims, experience on the some of the older machines at the Delaware facility would not necessarily be helpful. (Sims Dep. at 33-35).

Of the eight white applicants hired by Defendant, only Jeff Galbraith and Fred Garcia had previous experience working for Weyerhaeuser, Galbraith at the Delaware plant and Garcia at the Bedford, Ohio plant. (Ex. 12-14 to Sims Dep.). Garcia had previously operated a Flexso folder gluer machine, but it was not as high tech as the machine at Mt. Vernon. (Sims Dep. at 142-43). It is unclear whether Galbraith had any experience as machine operator in Delaware. Plaintiff, on the other hand, had experience "work[ing] on every machine in [the] Delaware plant," with the exception of the big bander. He had worked as a "utility man," providing breaks for other employees operating the machinery, and had also cleaned the machines. He later worked as a top

stacker, operator, and double backer on the corrugator, as a bander and operator of a post machine and a helper on the presses. (Pl. Dep. at 66-67, 70-74). A reasonable jury could find that Plaintiff was significantly better qualified than the eight white employees who were hired instead, raising an inference that Plaintiff was not hired was because he is African-American.

Plaintiff also argues that Defendant's proffered reasons for not hiring him were insufficient. Defendant maintains that Plaintiff's performance at the interview was "terrible," yet his average score per question was higher than that of Abney, Bevington, Van Winkle, and Rhoads. (Exs. 11, 15, 28, 37 to Sims Dep.). Defendant also complained that Plaintiff had difficulty understanding and responding to the questions, yet Defendant hired Phillip Rhoads, described by the interviewers as "not articulate." (Ex. 36 to Sims Dep.). Defendant further argues that Plaintiff appeared to lack the ambition and drive to succeed as an operator in a fast-paced environment. Nevertheless, Defendant hired Abney, described by the interviewers as "slow or laid back," and who had possible "problems with disorganization," and had been "laid off every job he has had before." (Ex. 11 to Sims Dep.). Defendant also hired Van Winkle even though he was "very young," "inexperienced" and "only wants to work 1 year." (Ex. 28 to Sims Dep.).

In its reply brief, Defendant argues that the eight white applicants singled out by Plaintiff are not proper comparators. Shortly after Plaintiff's interview, Leggett moved to a different facility and, consequently, he was not part of the panel that interviewed any of the eight comparators. Citing Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992), Defendant argues that because the panel members who interviewed the candidates were not identical, the white applicants were not "similarly situated in all respects." The Court rejects this argument. The "similarly situated" inquiry generally arises in connection with the question of whether a plaintiff alleging disparate

15

treatment can establish a prima facie case. The plaintiff must show that he was a member of a protected class and that for the same or similar conduct he was treated differently than "similarly-situated" non-minority employees. Id. at 583. The applicability of the "similarly situated" inquiry to the pretext portion of the analysis of a failure-to-hire claim is dubious at best.

Moreover, assuming *arguendo* that the "similarly situated" inquiry applies, current Sixth Circuit law does not require an exact correlation. It requires only that the plaintiff and comparator be similar in "all of the *relevant* aspects." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998). In the Court's view, Leggett's departure does not preclude such a finding. Plaintiff was interviewed by Leggett, Sims, Snell, and Baker. Sims and Snell also served on the three-person panel that interviewed Rhodes, Frye, Bevington, Van Winkle, and Casebolt. (Exs. 15, 17, 28, 34, 36 to Sims Dep.). Sims and Baker served on the three-person panel that interviewed Abney. (Ex. 11 to Sims Dep.). Sims also interviewed Garcia, although it is not clear who else served on that panel. (Sims Dep. at 143). In any event, there was substantial overlap among the individuals who interviewed Plaintiff and the comparators.

From an objective standpoint, it appears that Plaintiff was at least as well qualified as the other applicants. It is undisputed that Defendant's decision not to hire him was based largely on the results of his interview. As the Sixth Circuit noted in White, "any evaluation of [an applicant's] interview performance is an inherently subjective determination, and thus easily susceptible to manipulation in order to mask the interviewer's true reasons for making the [employment] decision." 533 F.3d at 394. In this case, Plaintiff has presented sufficient evidence from which a reasonable jury could find that the reasons given for not hiring him were pretextual. Summary judgment is therefore inappropriate.

**IV.    Conclusion**

Defendant's motion for summary judgment (Doc. 34) is **GRANTED IN PART and DENIED IN PART**.  To the extent that Plaintiff's Complaint could be read to include claims arising prior to February 26, 2004, the Court agrees that these claims would be time-barred and summary judgment is appropriate.

However, viewing the evidence in the light most favorable to Plaintiff, the Court finds that genuine issues of material fact preclude summary judgment on the question of whether Defendant's proffered reason for not hiring Plaintiff for the entry-level production position at the Mt. Vernon facility in September of 2005 was pretextual.  The Court therefore denies summary judgment on this claim.

**IT IS SO ORDERED.**

Date: December 21, 2009                    **/s/ John D. Holschuh**
                                           John D. Holschuh, Judge
                                           United States District Court